UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-23131-Civ-SCOLA

JESUS JIMENEZ, and LAURA JIMENEZ,
his wife and dependent,

      Plaintiffs,

vs.

MIAMI-DADE COUNTY;
CHARLES DANGER, individually;
and RICARDO ROIG, individually,

      Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
TO DISMISS THE SECOND AMENDED COMPLAINT**

In their Second Amended Complaint, Plaintiffs Jesus Jimenez and Laura Jimenez allege that Defendants Miami-Dade County (MDC), Charles Danger, and Ricardo Roig violated several provisions of the Servicemembers Civil Relief Act (SCRA), 50 App. U.S.C. §§ 501–597b, when Defendants instituted and continued to prosecute civil condemnation proceedings against three properties owned by Plaintiffs. Defendants have moved to dismiss the Second Amended Complaint, contending in the alternative that it fails to state a valid claim for relief under the SCRA, that it fails to state a claim for governmental liability against Defendant MDC, and that Defendants Danger and Roig are entitled to qualified immunity. For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**. Because one of the Jimenezes' claims survives, the Court also **VACATES** the discovery stay (DE 35). The Court will issue a separate amended scheduling order resetting the discovery and trial deadlines so that this case can proceed as normal.

## BACKGROUND

This action seeks equitable and monetary relief for alleged violations of the SCRA. For the purposes of deciding Defendants' Motion to Dismiss (DE 42), the Court takes the Jimenezes' well-pled factual allegations as true. At all relevant times, Jesus Jimenez is and has been on active duty in the United States Army. (DE 37 at 2.) Laura Jimenez is his wife and dependent. (*Id.*) Defendant Roig is an officer of the MDC Building and Neighborhood Compliance Department. (*Id.*) Defendant

Danger is an officer—allegedly the director—of the MDC Building and Neighborhood Compliance Department. (*Id.* at 3.) Defendant MDC is a political subdivision of the State of Florida. (*Id.* at 2.)

Jesus Jimenez owns three parcels of realty within the county: 1488 NW 103 Street (the "1488 parcel"), 1487 NW 102 Street (the "1487 parcel"), and 1477 NW 102 Street (the "1477 parcel"). (*Id.* at 3.) On or about June 11, 2007, while Jesus Jimenez was on active military duty, Defendants instituted civil condemnation proceedings against all three of the properties (collectively, the "Subject Properties"). (*Id.*)

On July 11, August 31, October 2, October 11, and October 16 of 2007, the Jimenezes notified Defendants in writing of Jesus Jimenez's active duty status and requested extensions of time in writing regarding the condemnation proceedings. (*Id.*) These writings were also forwarded by then-Governor Charlie Crist to MDC's "other policymakers"—including the County Board of Commissioners—on October 29, 2007. (*Id.* at 3-4.) On November 5, 2007, Jesus Jimenez's commanding officer sent a letter to Defendants documenting Jesus Jimenez's active duty status and explaining that his military duties prevented him from appearing in the condemnation proceedings and that military leave was not authorized for him to attend. (*Id.* at 4.)

On November 7, 2007, Defendants took three significant actions: Roig and Danger responded that MDC had determined that the SCRA did not apply to the condemnation proceedings; Defendants refused to stay or delay the condemnation-proceedings hearing; and they ordered that the 1488 parcel be vacated and that electric power to the residence on that parcel be disconnected. (*Id.* at 4.) The Jimenezes imply that Laura Jimenez resided at that residence on that date. (*See id.* at 4-6.) In June 2011, the Defendants demolished that residence. (*Id.* at 4.) Laura Jimenez, who was pregnant, lived at that residence at that time. (*Id.*) Defendants then imposed a lien on that parcel for the cost of demolishing the residence. (*Id.* at 6, 8.) The Jimenezes also allege that as a result of Defendants' actions, the other parcels were condemned; electricity to them was disconnected; the Jimenezes, their dependents, and their tenants were evicted from them; and liens were imposed on them. (*Id.* at 5-6.)

The Jimenezes sued Defendants in August 2011, seeking monetary relief based on Defendants' violating the SCRA and several of the Jimenezes' constitutional rights. They brought the constitutional claims under 42 U.S.C. § 1983. In September 2011, they filed an Amended Complaint that sought injunctive and anticipatory relief in addition to money damages. Defendants filed a Motion to Dismiss (DE 13). Because Defendants Roig and Danger contended that they were entitled to qualified immunity, the Court in June 2012 granted Defendants' Motion for a Protective Order and stayed all discovery against Defendants, pending the Court's ruling on the Motion to Dismiss. (DE 35.) In July 2012, the Court granted Defendants' Motion to Dismiss, dismissing the Jimenezes' claims

without prejudice and granting them leave to file a Second Amended Complaint. (DE 36.) The discovery stay was not lifted. In accordance with the Court's Order, the Jimenezes did file a Second Amended Complaint, keeping their SCRA claims and discarding their constitutional claims brought under 42 U.S.C. § 1983. (DE 37.) Defendants moved to dismiss this complaint, contending in the alternative that it fails to state a valid claim for relief under the SCRA, that it fails to state a claim for governmental liability against Defendant MDC, and that Defendants Danger and Roig are entitled to qualified immunity. (DE 42.) That Motion is now before the Court.

## ANALYSIS

A.      **Do the Jimenezes state a valid claim under the SCRA?**

Defendants contend that the Jimenezes fail to state a valid claim under the SCRA and that their Second Amended Complaint should therefore be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure. When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all of the Complaint's well-pled factual allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Rule does not require detailed factual allegations, but it does require "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (brackets, internal citation, and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will be dismissed. *Id.*

The SCRA is the latest in a series of statutes aimed at helping servicemembers "devote their entire energy to the defense needs of the Nation." 50 App. U.S.C. § 502(1). Its purpose is "to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." *Id.* at § 502(2). The SCRA's protections extend to all military personnel on active duty, including career servicemen and women. *Conroy v. Aniskoff,* 507 U.S. 511 (1993). Courts should liberally construe the SCRA in favor of those "who dropped their affairs to answer their country's call." *Boone v. Lightner*, 319 U.S. 561, 575 (1943).

The Jimenezes allege that Defendants violated several sections of the SCRA. The Court will analyze each section in turn to determine whether the Jimenezes have asserted a valid claim under that section.

The Jimenezes allege that Defendants violated 50 App. U.S.C. § 531 by evicting the Jimenezes from the 1488 parcel and by subjecting the premises on that parcel to a distress. (DE 37 at 5.) (A *distress* "is the taking of another's personal property out of his possession either for holding or for sale in order to obtain satisfaction of a past due rent claim." *Lesher v. Louisville Gas & Electric Co.*, 49 F. Supp. 88, 90 (W.D. Ky. 1943).) During a period of military service of a servicemember, § 531(a)(1)(A) prohibits a landlord or another person with paramount title from evicting a servicemember or the servicemember's dependents from a premises that is occupied "primarily as a residence" and "for which the monthly rent does not exceed $2,400." Section 531(a)(1)(B) prohibits a landlord or other person with paramount title from "subject[ing] such premises to a distress during the period of military service." Neither of these prohibitions apply to a government condemning property. Based on the statute using the terms *landlord*, *rent*, *eviction*, and *distress*, courts have construed the substantially similar predecessor statute to § 531 as "contemplat[ing] a landlord-tenant relationship." *Clinton Cotton Mills v. United States*, 164 F.2d 173, 176 (4th Cir. 1947); *accord Arkless v. Kilstein*, 51 F. Supp. 886, 888 (E.D. Pa. 1944) (reasoning that the predecessor statute relates to disturbing the landlord-tenant relationship because it uses the term *agreed rent* and because it refers to a maximum monthly rent); *Lesher*, 49 F. Supp. at 89-90 (holding that a utility company's disconnecting power to a residence did not violate the predecessor statute because there was no landlord-tenant relationship between the company and the bill payer). But there is no landlord-tenant relationship between Defendants and the Jimenezes. And because the Jimenezes own the Subject Properties, they do not pay rent and thus do not reside in a premises covered by § 531—that is, they do not reside in a premises "for which the monthly rent does not exceed $2,400."[1] The term *distress* itself does not apply to the present case because "[t]he fundamental element of 'distress' is the taking of another's personal property out of his possession either for holding or for sale in order to obtain satisfaction of a past due rent claim." *Lesher*, 49 F. Supp. at 90. The Jimenezes do not allege that they owe past-due rent—nor could they, since they own the subject properties. Although the Court must liberally construe the SCRA, extending § 531 to embrace the condemnation proceedings would require judicial

---

[1] Although this monthly rent limitation on what premises are covered appears in § 531(a)(1)(A) (the eviction provision), the limitation covers § 531(a)(1)(B) (the distress provision) as well because that provision prevents "subject[ing] *such* premises to a distress," thereby incorporating the limitations specified previously in the statute.

legislation, which the Court cannot do.[2]  *See id.* (holding that though the court must construe the predecessor statute to § 531 liberally, that did not allow the court to extend the statute to cover a utility company's disconnecting power to a residence because that would require judicial legislation).

The Jimenezes next allege that Defendants' actions have deprived them of their right of redemption under 50 App. U.S.C. § 561(c), and that those actions constitute "an assertion of a tax or assessment" under § 561(a) or a forfeiture of the Jimenezes' property under § 561(b)(1). (DE 37 at 5.) But as Defendants argue, § 561 prohibits only the sale of a servicemember's property "to enforce the collection of a tax or assessment" unless a court finds that the servicemember's military service did not affect the servicemember's ability to pay. The Jimenezes do not allege that their property was sold or that Defendants attempted to sell it—let alone allege that any sale or attempted sale was for failing to pay taxes. And the right of redemption in § 561(c) applies only to property that "is sold or forfeited to enforce the collection of a tax or assessment." Since the Jimenezes do not allege that Defendants sold or forfeited their property for failing to pay taxes, § 561(c) is inapplicable.

Relying on 50 App. U.S.C. § 597, the Jimenezes next argue that Roig's and Danger's actions (1) indicate a "pattern or practice" of violating the SCRA and (2) "raise an issue of significant public importance." (DE 37 at 6.) But only the Attorney General is authorized to bring an action under § 597. 50 App. U.S.C. § 597(a). The Jimenezes therefore cannot bring a private action under this section. Although the Jimenezes concede this point (DE 47 at 2), they ask the Court to imply a private right of action that would allow them to seek the various forms of relief authorized in § 597(b), which include assessing civil penalties. The Court declines the invitation. Section 597(c) allows "a person aggrieved by a violation of this Act" to intervene in an action brought by the Attorney General, but § 597(c) limits the relief available to that person to the relief available under § 597a, which does not include assessing civil penalties.

The Jimenezes final claim under the SCRA is that Defendants violated § 522 by failing to grant Jesus Jimenez's requests for an extension or stay of the condemnation proceedings in 2007.[3] Because

---

[2] Because the Jimenezes fail to state a claim under § 531(a), their argument that Defendants should be criminally liable under § 531(c)—which makes it a misdemeanor to knowingly participate in an eviction or distress in violation of § 531(a)—also fails. But more importantly, the Jimenezes cannot use a civil suit to impose criminal liability. Criminal proceedings are separate from civil proceedings and need to be brought by a duly authorized prosecutor.

[3] The Jimenezes also refer to § 597a, which does provide a private right of action for "any person aggrieved by a violation of this Act." But since this section simply provides a private cause of action for a violation of another section, the Jimenezes must be able to identify a substantive section of the SCRA that Defendants violated.

the Court concludes that the § 522 claim has merit, the relevant portions of the statute are set forth in full below:

(a) Applicability of section

This section applies to any civil action or proceeding . . . in which the plaintiff or defendant at the time of filing an application under this section—

(1) is in military service or is within 90 days after termination of or release from military service; and

(2) has received notice of the action or proceeding.

(b) Stay of proceedings

(1) Authority for stay

At any stage before final judgment in a civil action or proceeding in which a servicemember described in subsection (a) is a party, *the court . . . shall, upon application by the servicemember, stay the action* for a period of not less than 90 days, if the conditions in paragraph (2) are met.

(2) Conditions for stay

An application for a stay under paragraph (1) shall include the following:

(A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.

(B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter.

50 App. U.S.C. §522 (emphasis added). So if a servicemember meeting the requirements of § 522(a) submits a valid application for a stay under §522(b)(2), then the court is required to stay the proceedings under §522(b)(1). Significantly, the term *court* in § 522 plausibly includes MDC's condemnation proceedings[4] because the SCRA defines *court* as "a court or an administrative agency of the United States or of any State (including any political subdivision of a State), whether or not a court or administrative agency of record." 50 App. USC. § 511(5). Similarly, the use of the terms *plaintiff*

---

[4] In several places in their Second Amended Complaint, the Jimenezes refer to the condemnation proceedings as being conducted through a hearing or process conducted by the MDC Unsafe Structures Board that Defendants controlled. (DE 37 at 4-5.)

and *defendant* in § 522 do not take the condemnation proceedings in the present case outside the ambit of § 522 because these terms "are not to be construed in their narrow formal sense," but rather construed liberally. *Shire v. Superior Court in and for Greenlee County*, 162 P.2d 909, 912 (Ariz. 1945).

With these principles in mind, the Jimenezes adequately allege that Defendants violated this section by not granting them a stay of the condemnation proceedings. The Jimenezes allege that on several occasions in 2007, they notified Defendants in writing of Jesus Jimenez's active duty status and requested extensions of time in writing regarding the condemnation proceedings. (DE 37 at 3.) On November 5, 2007, Jesus Jimenez's commanding officer sent a letter to Defendants documenting Jesus Jimenez's active duty status and explaining that his military duties prevented him from appearing in the condemnation proceedings and that military leave was not authorized for him to attend. (*Id.* at 4.) The Jimenezes also allege that they "correctly applied for a stay of . . . [D]efendants' proceedings against their residence and adjoining properties pursuant to [§ 522]." (*Id.* at 5.) Though this last allegation is conclusory and would be insufficient by itself under the governing legal standard, their other more specific factual allegations plausibly make out a § 522 claim. Their various notices to Defendants, coupled with the letter from Jesus Jimenez's commanding officer, satisfy at this stage of the proceedings the conditions for a stay under §522(b)(2). And they plainly allege that Jesus Jimenez was on active military duty during the condemnation proceedings and that he received notice of the condemnation proceedings, thereby establishing that § 522 applied to the condemnation proceedings under § 522(a). Because they have adequately alleged that §522 applied to the condemnation proceedings and that they satisfied the conditions for a stay, Defendants' refusal to grant their request to stay the proceedings violated § 522(b)(1).

In reaching this conclusion, the Court distinguishes *City of Cedartown v. Pickett*, 22 S.E.2d 318 (1942) and declines to follow *McMurty v. City of Largo*, 837 F. Supp. 1155 (M.D. Fla. 1993), which relied on *Pickett* without extensive discussion. *Pickett* arose out a dispute between Picket, a business owner, and the city, which had adjudged his business a public nuisance and ordered him to abate it (the nuisance judgment). 22 S.E.2d at 319. Pickett did not appeal the nuisance judgment and it became final. *Id.* at 319, 322. Pickett then sued the city in state court, seeking to enjoin the city from enforcing the nuisance judgment. *Id.* The state court granted a preliminary injunction and the city appealed to the Georgia Supreme Court, which ruled in favor of the city and reversed the injunctions. *Id.* Before the Supreme Court's remittitur was transmitted to the state court, Pickett applied to the trial judge for a stay under the predecessor statute to § 522, asserting that he was now in the military. 22 S.E.2d at 319-320. Without notifying the other side and without a hearing, the judge entered an *ex*

*parte* order granting the stay and also ordering that no order would be entered in the case based on the Supreme Court's remittitur. *Id.* at 320. This stay order was then appealed to the Georgia Supreme Court, which reversed the stay. *Id.* at 321. The Court concluded that the stay order was invalid because it was "granted *ex parte*, without notice to the opposite party and without affording the opposite party an opportunity to be heard." *Id.* The Court then went on to hold that the stay order was invalid for an additional reason: namely, that § 522's predecessor did not apply to stay a proceeding when "the man in military service is seeking to prevent the abatement of a condition which *has been adjudged* a common nuisance." *Id.* at 321 (emphasis added). In support of this alternative reason for invalidating the stay, the Court relied on two facts: (1) Pickett participated in the city's proceedings that determined that the business was a nuisance and (2) the nuisance judgment became final before Pickett entered into military service and applied for the stay. *Id.* at 322. These facts distinguish *Pickett* sharply from the present case. At the time the Jimenezes applied for a stay in 2007, their property had not yet been condemned or declared a nuisance. (DE 37 at 3-4.) Moreover, Jesus Jimenez, unlike Pickett, was *not* able to participate in the proceedings because he was already in active duty in the military when the proceedings were held. (*Id.*) One of the central purposes of the SCRA is to "provide for the temporary suspension of judicial and administrative proceedings . . . that may adversely affect the civil rights of servicemembers." Concluding that the predecessor to § 522 did not apply in Pickett's case does not undermine this purpose because Pickett was able to and did participate in the city's proceedings. But reaching the same conclusion in the present case would sharply undermine that purpose because Jesus Jimenez was not able to participate in the proceedings.

The decision in *McMurty* misreads *Pickett* as setting forth the unyielding principle that the predecessor statute to § 522 does not apply to "proceedings brought for the purpose of abating a public nuisance." 837 F. Supp. at 1157. But *McMurty* fails to recognize that *Pickett* expressly relied on the fact that Pickett was able to participate in the underlying proceedings and that at the time Pickett applied for a stay, the property in question had already conclusively been determined to be a nuisance. Moreover, if *Pickett* were to establish the unyielding principle that *McMurty* relies on it for, then that principle would sharply conflict with the plain language of the statute. For these reasons, the Court declines to follow *McMurty*.

Having established that Defendants violated § 522, the next question is whether the Jimenezes have a cause of action for this violation. Nothing in § 522 authorizes a servicemember to sue. *See* 50 App. U.S.C. § 522. Although § 597a provides a private cause of action for violations of the SCRA, § 597a did not become effective until October 2010, well after Defendants violated § 522 in 2007. So § 597a helps the Jimenezes only if the Court determines that applying § 597a would not be

impermissibly retroactive. *See Gordon v. Pete's Auto Service of Denbigh, Inc.*, 838 F. Supp. 2d 436, 441 (E.D. Va. 2012) (analyzing whether applying § 597a(b), which authorizes a court to award attorney's fees, would be impermissibly retroactive). Neither party briefed this issue.

The Court need not decide the retroactivity of § 597a in the present case because the Court holds that § 522 provides an implied private right of action. Before the October 2010 enactment of § 597a, "most federal courts examining whether particular provisions of the SCRA provided an implied private right of action had concluded that they did." *Id.* at 445 (collecting cases). The Court sees no reason to depart from this majority rule. If a servicemember does not have a private right to sue for § 522 being violated, then the language in the statute mandating that a court grant a stay when presented with a proper application is of no value to servicemembers. Put another way, without a private right of action to enforce § 522, courts as defined broadly in the SCRA could simply ignore the statute's mandate without being held responsible. This would undermine one of the central purposes of the SCRA, which is to temporarily stay proceedings that may adversely affect a servicemember's civil rights while he or she serves our country. 50 App. U.S.C. § 502(2). Because Congress could not have intended such a result, the Court holds that there is a private right of action to enforce § 522. *Thompson v. Thompson*, 484 U.S. 174, 179 (1988) (reasoning that the "ultimate issue" in deciding whether to imply a private right of action is congressional intent). The Jimenezes have therefore stated a valid claim under § 522.

**B.     Do the Jimenezes fail to state a claim for governmental liability under § 522?**

Defendants contend that MDC cannot be liable under any valid SCRA claims because the Jimenezes cannot satisfy the requirements for imposing liability on local governments under 42 U.S.C. § 1983. This argument appears to be recycled from Defendants' previous motion to dismiss, when the Jimenezes asserted claims under § 1983. Those claims are now gone. And the Court is not persuaded by Defendants' assertion—unadorned by argument or authority—that the principles for imposing governmental liability in § 1983 claims should also apply to SCRA claims. At this stage of the proceedings, the Jimenezes' § 522 claim remains valid against MDC.

**C.     Are Roig and Danger qualifiedly immune from the claim under § 522 of the SCRA?**

Roig and Danger assert that the qualified-immunity doctrine protects them from any valid claims the Jimenezes have under the SCRA. (DE 42 at 6.) Qualified immunity completely protects "government officials sued in their official capacities if their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."[5] *Gray ex rel Alexander v. Bostic*, 458 F.3d 1295, 1303 (11th Cir. 2006). Courts use a two-part test to determine if an official is entitled to qualified immunity: (1) was a statutory or constitutional right violated, and (2) if so, was the violated right clearly established. *Id.* Under this test, neither Roig nor Danger are qualifiedly immune from the § 522 claim. Roig and Danger's conduct in denying the stay violates § 522, which is a clearly established statutory law.

## CONCLUSION

At this stage of the proceedings, only the Jimenezes' § 522 claim is valid. Defendants' Motion to Dismiss the Second Amended Complaint is therefore **GRANTED in part and DENIED in part**. All of the Jimenezes' claims except for their claim under 50 App. U.S.C. § 522 are **DISMISSED with prejudice**. The Court's Order staying discovery (DE 35) is **VACATED**. The Court will enter an amended scheduling order and the case will proceed.

**DONE AND ORDERED** in chambers, at Miami, Florida, on January 18, 2013.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

*Copies to:*
Designated U.S. Magistrate Judge
Counsel of record

---

[5] Officials are entitled to qualified immunity only if they prove that they were acting within the scope of their discretionary authority. *Id.* Officials act within the scope of their discretionary authority when their conduct is (1) undertaken in accordance with their official duties and (2) within the scope of their authority. *Harbert International, Inc. v. James*, 157 F3d 1271, 1282 (11th Cir. 1998). It is undisputed that Roig and Danger acted within the scope of their discretionary authority as Building and Neighborhood Compliance Department officers at all relevant times alleged in the Second Amended Complaint.